(No. 3206—

WALTER CRITCHLOW, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed October 11, 1939.*

JOSEPH H. GOLDENHERSH, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For about sixty (60) days prior to May 14, 1937, claimant was employed as a laborer by the Division of Highways of the Department of Public Works and Buildings of the respondent. On the last mentioned date claimant, with other employees of the respondent, was engaged in watering recently-laid sod, and was working near the junction of U. S. Routes 40 and 67, between the cities of Collinsville and East St. Louis.

While in the performance of his duties, he tripped over a three-inch hose which was being used in the watering process and fell heavily against a steel plate guard rail. He was immediately taken to the office of Dr. R. H. Graves in Collinsville, where first aid treatment was administered, and was then taken to St. Mary's Hospital in East St. Louis. X-ray pictures were taken and it was ascertained that claimant had sustained a spiral fracture of the upper third of the shaft of

the left humerus and an avulsion fracture of the greater tuberosity of the left humerus.

Claimant remained in such hospital until June 11, 1937, when he was returned to his home. He remained under the care of Dr. Graves until September 29, 1937, when he was sent to Chicago for examination by Dr. Thomas. Two days later he returned to his home and remained there until October 6, 1937, on which date he again went to work for the respondent and continued in such work until December 20, 1937. On the last mentioned date he was sent to Dr. Thomas for further treatment. He continued under the treatment of Dr. Thomas until January 14, 1938, on which date he returned to his home, and on January 17, 1938, his services with the Department were terminated.

There is no question but what at the time of the accident the claimant and respondent were operating under the provisions of the Workmen's Compensation Act; that the injuries sustained by the claimant arose out of and in the course of his employment; that the respondent had notice of the accident; and that claim for compensation on account thereof was made within the time required by the provisions of the Act. Claimant at the time of the accident was fifty-two (52) years of age, was married, and had no children under the age of sixteen (16) years.

All necessary first aid, medical, surgical and hospital services were furnished by the respondent, and claimant was paid compensation for temporary total disability at the rate of Nine Dollars and Forty-four Cents ($9.44) per week for the following periods, to wit: For the period from May 15 to October 5, 1937, $194.11; for the period from December 20, 1937, to January 17, 1938, $39.10; making a total of $233.21.

No claim is made for any further temporary disability, but claimant seeks an award for the specific loss of the use of his left arm.

The question of the extent of such loss and the rate and amount of compensation to be paid therefor, are the only questions in dispute herein.

From the stipulation of the parties hereto, it appears that during the time claimant was in the employ of the respondent, he worked on two Federal projects, the first of which was commenced on March 22, 1937 and which closed on September 7th, 1937, and the other of which was authorized on August

16th, 1937 and closed on March 7th, 1938; that none of the men who were members of the gang on which claimant was working, worked in excess of Two Hundred (200) days during the year preceding the date of claimant's injury. From such stipulation and other facts in the record, we conclude that claimant's annual earnings must be computed on the basis of 200 times his daily wage of Four Dollars ($4.00), making his annual earnings Eight Hundred Dollars ($800.00), and his average weekly wage Fifteen Dollars and Thirty-eight Cents ($15.38). His compensation for temporary total disability therefore should have been at the rate of Seven Dollars and Sixty-nine Cents ($7.69) per week, instead of Nine Dollars and Forty-four Cents ($9.44) as hereinbefore set forth. As the result of such error in computation, claimant has been overpaid the sum of Forty-three Dollars and Sixteen Cents ($43.16) on account of temporary total disability.

The medical witnesses differed widely in their conclusions as to the extent of the loss of the use of claimant's left arm, and his resulting disability. He appeared personally in court for inspection and examination. From such inspection and examination, and from a consideration of all of the evidence in the record, we find that as the result of the accident in question, claimant has suffered a loss of motion in the fingers of his left hand, the forearm and elbow of his left arm, and in his left shoulder, and that he has thereby sustained the permanent loss of forty (40) per cent of the use of his left arm; and that under the provisions of Paragraph (e) of Section 8 of the Workmen's Compensation Act, he is entitled to to have and receive from the respondent compensation for the period of Ninety (90) weeks, at the rate of $7.69 per week, commencing May 15th, 1937, less the sum of $43.16, overpaid to him for temporary total disability as above set forth.

All of such compensation has accrued at this time, and an award is therefore entered in favor of the claimant for the sum of Six Hundred Forty Eight and 94/100 ($648.94) Dollars.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof", (Illinois Revised Statutes 1939, Bar Assn. Edition, Chap. 127, Pars. 180-181) and being subject also to the terms of an Act entitled "An Act Making Appropriations to the Auditor of Public Accounts for the Disburse-

ment of Certain Moneys until the Expiration of the First Fiscal Quarter after the Adjournment of the Next Regular Session of the General Assembly'', approved July 1st, 1939 (Sessions Laws 1939, page 117);—and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided by the foregoing Acts.